Opinion op the Court,
by Judge Owsley.
Liggett and Ashley exchanged one hundred acres of land. Liggett assigned to Ashley a bond which he on Searcy, for the title to the land given by him in exchange. . Ashley gave his bond to Liggett, for a conveyance, stipulating, in case of loss, to reimburse the money paid him, with lawful interest, or to make a to one half of the hundred acres whereon William Hill formerly lived; the price for said fifty acres to be thirty-seven pounds ten shillings.
Liggett died, and the whole of the land received- by him from Ashley, was lost, except forty-five and three fourths acres. After Liggett’s death, Robert Newland, as ^le and agent af his widow and ehildren, obtained' Ashley’s bond, and adjusted with him the demand for the lost land; received from Ashley a bond for two hundred and eighty dollars, and gave him a Receipt against any future claim upon his bond to Liggett. This bond for two hundred and eighty dollars was afterwards assigned by Newland to Esther Liggett, who assigned it'to Robinson, who brought suit thereon and recovered judgment at law.
This suit was then brought in equity, by Ashley, against Robinson, the heirs of Newland, (he having departed this life,) the heirs of Liggett, and his widow, and Boyd, to whom she had married since Liggett’s death.
The bill of Ashley charges, that the settlement was made with Newland, and the bond for the money executed to him by Ashley, under the conviction that the whole of the land given by Ashley in exchange had been lost, except twenty-two and a half acres, and that *179 Newland possessed competent authority to adjust and finally settle the claim for the lost land; but he (Ashley) has since discovered that there remained of the tract forty-five acres and three fourths not lost, and that he is informed that Newland had no authority to conclude a settlement for the heirs of Liggett. The bill ashed and obtained an injunction against the judgment at law, and prayed for such relief as might be equitable, &c.
The court below decreed the contract between Ashley and Newland to be cancelled, the original bond given by Ashley to Liggett to be delivered up to the heirs of Liggett, and made the injunction perpetual against the judgment recovered by Robinson.
It does not appear, from any thing contained in the record, that Newland was regularly empowered to adjust the demand on Ashley, when the agreement was concluded between them. He appears, however, to have acted as the friend of the widow and children of Liggett, and they have since ratified and confirmed his acts, and now insists upon a fulfilment of the contract. The objection of Ashley to the authority of Newland, ought not, therefore, to release him from his contract in a court of equity. He obtains by the contract, as complete a discharge from the demand for the lost land, as if the authority of Newland had been originally strictly legal, and in equity and good conscience ought to perform his undertaking, unless the contract be liable to some other objection than that which is taken to the power of Newland.
With respect to the alleged mistake as to the quantity of acres lost, there is no room for any controversy. The proof is conclusive, that when the contract between Ashley and Newland was concluded, both parties labored under the belief that but twenty-two and a half acres of the land was saved, when in fact there were forty-five acres and three fourths not lost. But the mistake cannot, with any propriety, be ascribed to the fault of either party. When about to enter upon the settlement, neither party appears to have known the precise quantity of safe land, and it is proved to have been ascertained to be but twenty-two and a half acres, by the calculation of the mutual friend of .each party, to whom application was made for that purpose, and against whom there is no evidence of fraud or improper conduct.
*180 A mistake Which was thus common to both parties, and which was caused by the fault of neither, ought, most indisputably, to be relieved against in a court of equity. The relief should not, however, in the opinion of the court, go to the extent it was carried by the decree of the court below. It should not go to the entire destruction of the contract. The mistake consisted only in the quantity of acres lost, and cannot be presumed to have produced any influence over the parties, other than in fixing the amount agreed to be paid by Ashley. A reduction of that amount would, therefore, relieve Ashley from the effect of the mistake, and such is the only relief to which in justice he is entitled:
Instead of the decree which the court below gave, therefore, a decree ought to have been pronounced making the injunction perpetual, for the value of twenty-three and one fourth acres of land, estimating the value at the price per acre which the sum agreed to be given by Ashley will produce per acre, on the quantity of acres’ supposed by the parties at the making of the contract.
The decree must be reversed with costs, the cause remanded to the court below, and a decree there en-> tered, not inconsistent with this opinion.