Case 42.—SUIT BY JOHN COX AND OTHERS AGAINST E.
C. ROWLAND AND OTHERS TO CANCEL A CONTRACT
OF SALE AND RECOVER THE PRICE PAID THEREFOR.
—October 31.

## Rowland, &c. v. Cox, &c.

121    341
e130   151

Appeal from Lewis Circuit Court.

JAMES P. HARBESON, Circuit Judge.

Judgment for plaintiffs. Defendants appeal. Affirmed.

1. Mines and Minerals—Oil Lease—Assignment—Mutual Mistake—Where an oil lease provided that, unless the test
well contracted for proved fruitful, the lease should be null
and void, and after the lessee had drilled 489 feet they
salted the well, and one of them assigned his interest to
defendants' assignors, who in good faith conveyed a portion of their interest to plaintiffs, both believing that oil had
been struck in the well, plaintiffs, on discovering the facts,
were entitled to a cancellation of the transfer for mutual
mistake.

2. Same—Defenses—Estoppel—Where an oil lease provided that
the lessees should sink the well to the "first sand," and if
the well did not produce oil the lease should be null and
void, but the lessees, after driving the well to a depth of
489 feet, salted and abandoned it, their assignees were estopped to defend a suit for the cancellation of their conveyance of an interest therein on the ground that, if the well
had been sunk to the "first sand," it might have produced
oil.

3. Same—Speculative Interests—Where, at the time plaintiffs
purchased an interest in an alleged oil well from defendants,
both parties believed that it was an oil-producing well, instead of having been salted by defendants' assignors, plaintiffs were not precluded from cancelling the conveyance and
recovering the consideration because of the speculative
character of the property.

E. L. WORTHINGTON for appellant.

W. B. PUGH of counsel.

1. The contract herein sought to be cancelled is a conveyance of an interest in real estate. It purports to "bargain, sell, transfer and assign" three-fourths of one-sixth interest in the twenty-year lease in the DeKnight tract of land, containing one hundred acres, more or less.

2. There was no mistake made as to the terms of the conveyance, or as to the identity of the land sold. Both parties knew that the writing purported to convey a definitely described interest in a definitely described tract of land; and they all know what tract of land it was that was described in the conveyance. They knew that the writing did not purport to convey any interest in an oil well theretofore discovered.

3. The mistake that was made was simply and only this: Both parties erroneously believed a certain fact to be true which, if true, made the land purchased more valuable. That fact was not true. The buyers would not have bought at the price paid but for their erroneous belief in the existence of this fact. Both parties had equal knowledge and equal means of information. Both parties recognized the possibility that their belief in the existence of this fact might be erroneous. Neither practiced any fraud on the other. Will a court of equity cancel and set aside a deed for land under such circumstances and compel a return of the purchase money?

### AUTHORITIES CITED.

Western German Bank v. Farmers & Drovers Bank, 10 Bush, 674; 2 Pom. Equ., sec. 855; Wood v. Boynton, 64 Wis., 265; 54 Am. Rep., 610; Kowalke v. Milwaukee Ry. Co., 74 Am. St. Rep., 877; Atlantic Delaine Co. v. James, 94 U. S., 207.

W. C. HALBERT for appellees.

### POINTS MADE AND AUTHORITIES CITED.

1. The lease made by Stein and Bonniville to McCain, Carr and Dr. Wilson invested the lessees with no present interest in the land. (Donahue on Oil & Gas, 150, 151.)

2. The contract giving the lessees no present interest in the land, and the lessees fraudulently "salting" the well to deceive and defraud the lessors, and assuring them that the well was completed and thereupon ceasing to work on the lease, was a conclusive election on their part to terminate the lease and

abandon the contract to drill the test well, and they had no right or interest thereafter in the lease to sell.

3. The contract, of record, expressly reserving the lessors' the unqualified right to purchase the interest of any of the lessees at the same price that any one would buy it, and the appellants having actual as well as constructive notice of this fact, and in violation of the agreement purchasing the interest of Carr for $500 without giving the lessors any opportunity to acquire it at that price, the appellants did not by their purchase and conveyance from Carr acquire an absolute title, but took the interest subject to the right of the lessors to buy it at the $500, and they could not sell and transfer to appellees any greater right or better title than they acquired from Carr, and this was not what appellants sold and conveyed or appellees purchased.

4. The appellants and appellees made the contract of July 10th, or 15th, 1902, upon the mutual belief that the well on the DeKnight tract of land was completed into the oil sand and had found oil therein, and the only uncertain or contingent feature of the enterprise as then contemplated by both parties was the quantity of oil the well might produce when put to pumping. The fraud of McGain, Carr and Dr. Wilson in "salting" the well was unknown to both the contracting parties, but it was the material fact that induced the parties to make the contract, and without which it is quite evident the contract would not have been made or even thought of. The right of the appellees to a rescission of the contract under such circumstances, and a return of their money paid them, is undoubted in a court of equity. (Bedell v. Wilder, 65 Vt., 406, 36 Am. St. Rep., 871; Sherwood v. Walker, 66 Mich., 568, 11 Am. St. Rep., 531; Fritzler and Wife v. Robinson, 31 N. W. Rep., 61; Thiving, &c. v. Hall & Ducey Lumber Co., 41 N. W. Rep., 815; 2 Pom. Eq. Jur., 2d Ed., secs. 852, 853, 854, 856; Fetter on Eq., 124; 1 Story's Eq. Jur., 12th Ed., sec. 140; Benjamin on Sales, 3d Ed., sec. 415; 1 Mechen on Sales, secs. 275, 276; Pollock on Cont., Wald Ed., 482; Clark on Cont., 298.)

SAMUEL J. PUGH for appellees.

## POINTS AND AUTHORITIES.

1. The mutual mistake of fact as to the existence of a fruitful or oil producing well on the premises constituted the very basis or essence of the contract. They bargained as to what they supposed to be a vested right, when there was not even an enforceable contingent interest, therefore, the judgment of

Rowland, &c. v. Cox. &c.

rescission should be upheld. (Ruffner, &c. v. Ridley, &c., 81 Ky., 165; Blustone Coal Co. v. Bell, &c., 18 S. E. Rep., 493.)

2. The test well having actually produced no oil, appellants neither acquired nor transferred to appellees any title whatever, and certainly not such as they mutually contemplated. The consideration was neither good nor sufficient. (Thornton on Oil and Gas, secs. 153 and 130; Venture Oil Co. v. Fretts, 152 Pa. St., 451; Steelsmith v. Gartlan, 45 W. Va., 27; McNish v. Stone, 117 Pa. St., 457; Crawford v. Ritchie, 43 W. Va., 252; Cole v. Taylor, 8 Pa. Sup. Ct. Rep., 19; Ray v. Natural Gas Co., 138 Pa. St., 576; Donahue on Petroleum and Gas, sec. 4 [153]; Wald's Pollock on Contracts, 441.)

3. The original lessees had forfeited all rights and privileges under the lease contract, and their fraudulent transfer to appellants passed no title. There being no privity of contract between said lessees and the appellees herein, the latter had to look to their vendors alone for rescission and restitution.

4. Appellants and appellees made no contract, because the thing they supposed to exist, and the existence of which was indispensable to the institution of the contract, had no existence. There was no subject-matter—no substance.

5. There was at least constructive fraud in the execution of the contract, and it should have been rescinded on that ground. (Prewitt v. Trimble, 92 Ky., 176.)

THOS. R. PHISTER for appellees.

### POINTS AND AUTHORITIES.

1. Rescission of contract—Equity will rescind a contract if made under a mistake of a fact material to the agreement of the parties. (Pomeroy's Equity Juris., vol. 11, secs. 852, 856, 867, note, pp. 340, 878, 891; Benjamin on Sales, 390; Lawson on Contracts, sec. 215; Am. & Eng. Ency., vol. 24, p. 618; Dale, &c., Ex'ors of Fulton v. Roosevelt, vol. 5, Johnson Chancery Rep., 174; U. S. v. Charles, 74 Fed. Rep., 142; Allen v. Hammond, 11 Peters, 63, vol. 9, Lawyers' Ed., p. 633; Stresley v. Powell, 12 B. Mon., 178; Griswold v. Taylor, 1 Met., 230; Robinson v. Bright, 3 Met., 30; Bell v. Truitt, 9 B., 258; Sherwood v. Walker, 66 Mich., 568, 11 Am. Rep., 531; Bedell v. Wilder, 65 Vt., 377, 36 Am. Rep., 871; Miles v. Stevens, 3 Penn. St., 21, 45 Am. Rep., 624.)

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

On the 9th of May, 1902, A. J. Stein and B. A.

Bonniville made a contract with S. S. McCain, E. R. Carr and B. C. Wilson, by which, in consideration that the latter would sink one test well to the depth of the first sand for the purpose of finding oil, Stein and Bonniville leased to them for the period of 20 years one-half interest in all the oil in a certain boundary of land, less a royalty of one-eighth. The lease concludes with these words: ''Further, it is understood and agreed, that unless said test well proves fruitful—that is, produces oil—then this lease and contract shall be considered null and void and of no effect whatever.''

On June 29, 1902, when the test well had been sunk to a depth of 489 feet, it was reported that oil was struck. Examination showed oil in the well. McCain, Carr and Wilson, who were boring the wells, said that the drill had struck a crevice, and when it went down again became fastened, and after this they found oil had run in. There was considerable excitement on the subject, and on July 10th Carr and wife, in consideration of $500, conveyed to George T. William and E. C. Rowland, Carr's one-sixth interest. On July 15th William and Rowland sold to John Cox and R. D. Wilson for $800 three-fourths of the one-sixth interest which Carr had conveyed to them. After all this had been done, it was learned that no oil had been in fact struck in the well, but that Carr and his associates had bought several barrels of crude petroleum and poured them into the well. Cox and Wilson thereupon tendered to Rowland and William the deed for the interest conveyed to them, and demanded the $800 which they had paid, on the ground that it had been obtained from them by fraud and mistake. Their demand being refused, they filed this suit to recover the money. The allegations of the petition were denied, and on final hearing the

circuit court held that there was no fraud, but mutual mistake, and entered judgment in favor of the plaintiffs. Of this the defendants complain.

It will be observed that by the lease made to Carr and his associates it was stipulated that, unless the test well produced oil, the lease should be void and of no effect. The test well did not produce oil, and therefore by its terms the lease was void. It is insisted for appellants that this conclusion does not follow, for the reason that the well had been put down only 489 feet, and was some 40 or 50 feet from the sand. It is said that, if the well was bored down to the sand, it might prove oil-producing. This may be true, but it does not lie in the mouth of Carr and his associates to say so. They abandoned the well after pouring the oil in it and giving out that they had struck oil. They then proceeded to move off. The well, when they abandoned it, was not oil-producing. The contract contemplated the continuous boring of the well after they had begun. They can not be permitted to salt the well and abandon it, and, after they have abandoned it, to say that, if they had not abandoned it, perhaps they might have struck oil, and that therefore their lease is not void. Carr, therefore, had nothing to sell. His conveyance to William and Rowland passed nothing. As William and Rowland got nothing from Carr, they had nothing to convey to Wilson and Cox. Wilson and Cox paid $800 for nothing.

It is earnestly insisted that all of this was speculation, and that, where a man buys property of a speculative value, he can not recover his money because it turns out to be without value.

The rule laid down in 2 Pomeroy's Equity, sec. 855, is relied on: "When parties have entered into a contract or arrangement based upon uncertain or

contingent events, purposely as a compromise of
doubtful claims arising from them, and where parties
have knowingly entered into a speculative contract
or transaction, one in which they intentionally specu-
lated as to the result, and there is in either case an
absence of bad faith, violation of confidence, mis-
representation, concealment and other inequitable
conduct mentioned in a former paragraph, if the
facts upon which such agreement or transaction was
founded, or the event of the agreement itself, turn
out very different from what was expected or antic-
ipated, this error, miscalculation or disappointment,
although relating to matters of fact, and not of law,
is not such a mistake, within the meaning of the
equitable doctrine, as entitles the disappointed party
to any relief, either by way of cancelling the contract
and rescinding the transaction or of defense to a
suit brought for its enforcement.'' This rule has no
application.  Cox and Wilson, it is true, were specu-
lating in oil property.  They took the risk of how
much oil the well would produce; but they bought on
the idea that it was an oil-producing well.  They
were not speculating on the chance that there was no
oil in the well.  They assumed that oil had in fact
been struck. The rule also does not apply for the
reason that, the well, having been salted, Carr had
nothing to convey, and his vendees, William and
Rowland, simply stood as to title in his shoes.  If
this were an action by Rowland and William against
Carr to recover the $500 they paid him, clearly it
could not be maintained that the principle relied on
would apply.   But Rowland and William simply
bought Carr's interest, and they can no more retain
the money of Cox and Wilson than Carr could re-
tain their money if they had sued him.  It is true
Carr perpetrated the fraud, and Rowland and Wil-

liam were his victims. When they sold to Cox and Wilson, they did not know of the fraud. The trade made by them with Cox and Wilson was made under a mutual mistake, and the chancellor properly rescinded it.

Judgment affirmed.