CASE 19.—ACTION BY R. F. WRIGHT AGAINST H. C. NEALE
TO CANCEL A DEED FOR FRAUD.—October 29.

# Neale v. Wright

Appeal from Graves Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for plaintiff. Defendant appeals.—Affirmed. .

Corporations — Sale of Stock — Rescission — Mutual Mistake.—
Where the parties to a sale of stock acted on the supposition
that the published statements of the affairs of the corpora-
tion were true, in which case the stock would be worth par,
whereas under the true state of affairs, the statement as to
amount of merchandise on hand being grossly false, the
stock was worthless, the purchaser has a right to recission
for mutual mistake.

ROBBINS & THOMAS for appellee.

R. G. ROBBINS of counsel.

### POINTS AND AUTHORITIES.

In this action appellee is only asking that he be placed in statu
quo. Shall appellant have something for nothing? There has
been a complete failure of consideration. Even if appellant had
acted honestly in the transaction, the contract should be re-
scinded for mistake, fraud, or failure of consideration. (Amer-
ican & Eng. Encyc. of Law, vol. 21, p. 63.) )

2. Money or property which has been given for a chattel of

Neale v. Wright.

no value, may be recovered back. (Parson on Contracts, section 14, p. 385; Robinson v. Bright's Ex., 3 Met., 30.)

3. Wherefore an affirmance of the judgment of the lower court is most respectfully asked.

### AUTHORITIES CITED.

Ky. Stats., 549; Trimble v. Ward, 17 Ky. Law Rep., 508; Ward v. Trimble, 19 Ky. Law Rep., 1801; Prewitt v. Trimble, 92 Ky., 182; Am. & Eng. Enc. of Law, vol. 21, p. 63; Parson on Contracts, sec. 14, p. 385; Robinson v. Bright's Excr., 3 Met., 30.

W. J. WEBB, SPEIGHT & DEAN and WEBB & SEAY for appellant.

### POINTS AND AUTHORITIES.

1. In order to sustain this action, it must be alleged and proved, that appellant made or published a false statement of the condition of the corporation, knowingly, with intent to deceive, and that appellee relied upon such statement, or that appellant fraudulently concealed a material fact, which if disclosed to appellee he would not have made the contract. (Marshal v. Peck, 1 Dana, 614; Jameson's Adm'r v. Richardson, 7 Ky. Law Rep., 610; Foster v. Gibson, 18 Ky. Law Rep., 716; Cook on Stockholders. p. 355; Ball v. Lively, 4 Dana, 370; Campbell v. Hillman, 15 B. Mon., 508; Warren v. Barker, &c., 2 Duvall, 156.)

2. The representations must be material, precise and definite. (Jameson's Admr. v. Richardson, 7 Ky. Law Rep., 610.)

3. A director in a corporation is not presumed to know its condition, and action can not be maintained against him personally, unless it is alleged and proven that he knew such condition. (Pieratt v. Young, 20 Ky. Law Rep., 1815; Ward v. Trimble, 103 Ky., 159-160; Bank v. Caperton, 87 Ky., 306; Thompson on Corporations, vol. 3, sec. 4094; Thompson on Corporation, vol. 3, sec. 4097.)

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

On January 16, 1907, R. F. Wright conveyed to H. C. Neale a tobacco barn and the lot on which it stood, worth $2,000, for 20 shares of the common stock of

the May Pants Company, of the par value of $100
each.   On September 2, 1907, Wright brought this
action against Neale to cancel the deed, on the ground
that the stock of the May Pants Company, which
Neale represented to him to be worth at least par, was
then of no value, and that Neale knew the condition
of the company and had perpetrated a fraud on him.
It was also alleged that Neale was vice-president and
a director in the corporation, and that he had know-
ingly caused to be published false statements of its
condition, when, if the truth had been published, the
statements would have shown that the stock was
worth nothing.   Neale filed an answer, denying the
allegations of the petition.   Proof was taken, and on
final hearing the court adjudged the relief sought.
Neale appeals

The May Pants Company was incorporated in the
year 1890, with a capital stock of $35,000, paid in.
It was managed by seven directors, a president and
vice-president, general manager, secretary, and treas-
urer.   The affairs of the company were in fact man-
aged by the general manager, C. A. McDonald.   Mc-
Donald made reports to the directors, which showed
that during the first three years of its business the
corporation had accumulated a surplus amounting to
$35,000, and it then doubled its capital stock and
issued to its stockholders stock amounting to $35,000,
in lieu of the accumulated surplus standing to their
credit.   After this, things went on as before, McDon-
ald's statements showing that the company was mak-
ing large profits.   In November, 1906, by his report,
he showed that the company had a net capital at that
time which made the stock worth book value $161 to
the share.   They then issued to each stockholder as
much stock as he had, or doubled the stock of the

company a second time, each stockholder paying in 39 cents to the dollar; the 39 cents to the dollar so paid in and the 61 cents of accumulated profits making the face value of the new stock. After this had been done, McDonald, in November, 1906, resigned as general manager and was followed by E. G. Minton. In January following the trade was made between Neale and Wright, and in the following April Minton took an invoice, which showed that, instead of the company having on hand $194,826.13 of merchandise in November, it in fact had on hand only $47,437.18; the difference being $147,388.95. Minton communicated his discovery to the president and the vice-president, Neale; but they concluded to say nothing about it, in the hope that the company could work out, and a statement was then issued which showed the company in even better condition than McDonald's statement had showed it in November. Thus things went along until the following August, when some of the directors, learning of the condition of things promulgated it. Wright at once appealed to Neale to deed him back his property, which he refused to do, and this suit followed.

There is little or no conflict in the evidence as to the material facts of the case. The company, instead of having a surplus in November, had lost money, and the company's common stock was worth nothing. Neale and Wright were both directors in the company, and neither knew its real condition, although Neale did know that McDonald's statement was padded to the extent of 10 per cent. This he did not disclose to Wright, supposing, as he says, that the company would soon make that up. The directors in a company are its managing agents. It is their duty to publish true statements of the affairs of the corporation.

The published statements of the affairs of this corporation were so manifestly untrue that if Neale had transferred the stock to a stranger, who had bought it upon the faith of the statements published by the directors, clearly he would not be allowed to say that he did not know the condition of the corporation, and to keep the purchaser's money, who had bought the stock relying upon the truth of the statements. But it is insisted that as Neale and Wright were both directors in the company, one is as much to be charged with knowing the truth as the other, and that, if Neale had bad stock and sold it to Wright, the latter can not complain. There is much force in this. But there is another ground upon which the judgment may be rested. Conceding that Neale and Wright were both equally ignorant of the true condition of the corporation, and that they were equally innocent as to the false statements which had been published, still we have the fact that both of them acted upon the supposition that the statements which had been published as to the condition of the corporation were true. When Neale delivered this stock to Wright, he supposed that the corporation had $194,826.13 of merchandise in November, and so did Wright. If Wright had known that it had only $47,437.18 worth of merchandise, he would not have taken the stock for his barn. They both traded upon the supposition that the corporation had $147,389.95 worth of merchandise, which it did not have. This difference rendered the common stock worthless. Wright was not proposing to sell his barn for worthless stock, and Neale was not proposing to buy his barn with such stock. They both acted upon the supposition that the company had the goods which had been reported to them.

What, then, are the rights of the parties? In Bell

v. Truit, 9 Bush 257, a deed was executed in conse-
quence of the mutual mistake of the lessor and lessee
as to the existence of oil on the land. It turned out
that there was no oil on the land, and it was held that
the lease should be rescinded, following the rule laid
down in Leggett's Admr. v. Ashley, 5 Litt. 178, where
the court said: ''A mistake which was thus common
to both parties, and which was caused by the fault of
neither, ought, most indisputably, to be relieved
against in a court of equity.'' In Ruffner v. Ridley,
81 Ky. 165, 4 Ky. Law Rep. 958, it was held that
where, in the sale of land, there is an innocent and
mutual misapprehension as to the quantity conveyed,
where the contract has been executed, if the deficiency
is so great as to amount to a failure of consideration
for the purchase, the court will direct a rescission. In
Rowland v. Cox, 121 Ky. 341, 28 Ky. Law Rep. 307,
89 S. W. 215, the person who was boring a well re-
ported that the drill had struck a crevice, and when
it went down again became fastened, and after this
they found oil had run in. An examination showed
oil in the well, and there were several sales and pur-
chases of an interest in the well, made by persons
who innocently believed that oil had been struck. The
seller and the purchaser were both deceived; the fact
being that the person who was boring the well had
simply poured oil in it. It was held that the convey-
ances should be rescinded on the ground of mutual
mistake and a total failure of consideration. In that
case the court distinguished such transactions from
those where parties have knowingly entered into a
speculative contract in which they intentionally spec-
ulated as to the result, on the ground that these trans-
actions were had on the idea that oil had been struck,
when in fact and in truth simply a fraud had been

perpetrated.   Persons who deal in the stock of cor-
porations necessarily enter into speculative contracts,
and they will not be ordinarily released simply
because the stock turns out to be worth less than it
was supposed to be worth.   But here the stock which
Neale transferred to Wright for the land was of no
value.   As the fact proved, he received no considera-
tion for his land.   The parties were dealing upon the
supposition that the corporation had about four times
as much merchandise as it in fact had.   Their trade
was made upon the supposed condition of the corpor-
ation.   There was a mutual mistake, induced by the
statements of the condition of the corporation which
had been promulgated.   They were both deceived; but
when the truth appears, and it is shown that there
is a total failure of consideration for the deed, it will
be canceled in equity.

Judgment affirmed.