# Silver v. Overhead Door Co.

December 5, 1949.

J. W. Jones and Jones & Jones for appellant.

James Shaw for appellee.

Morris, Commissioner—Affirming.

On April 17, 1942, appellant delivered to appellee his promissory note for $901.20. In April of 1947 appellee filed petition alleging demand and non-payment and sought recovery. The substituted answer filed plead no consideration for execution of the note, and "that said note was signed and delivered by him to plaintiff with the understanding that if he would execute the note, plaintiff would not demand payment except upon condition that defendant could obtain through efforts and influence of plaintiff a volume of business which would enable him to pay said note out of his profits from said business, but by mutual mistake of the parties thereto said condition was not inserted in and made a part of said note, and that said business was not obtained by the defendant." A reply in denial joined issue.

When the case was called Silver moved the court to adjudge him the burden of proof. This motion was overruled and the court cast the burden on plaintiff over objection. At the close of all the testimony both parties moved for peremptory instruction. The court sustained plaintiff's motion, and the jury returned a verdict for the amount above mentioned and judgment was entered in accordance. On appeal it is contended that the court was in error, (1) in not awarding defendant the burden of proof; (2) in refusing to permit defendant to introduce certain copies of letters as secondary evidence, and lastly that the court erred in giving peremptory instruction for plaintiff, and in overruling defendant's motion for such an instruction.

On the first point appellant argues that since defensive plea was one of "no consideration" defendant was entitled to the proof burden. The rule is that a plea of "no consideration" places the burden on the defendant. Andrews v. Hayden's Adm'r, 88 Ky. 455, 11 S. W. 428; Lawyers' Realty Co. v. Bank of Ludlow, 256 Ky. 675, 76

S. W. 2d 920, and cases cited. We are of the opinion that the court was incorrect in award of the burden. Counsel for appellant in brief says that since the court "sustained plaintiff's motion for directed verdict, perhaps the burden is of no great importance," unless a new trial be directed.

The facts were that appellee was engaged in the sale and installation of overhead doors. It also acted as an agent of the Roleson Company in the sale of screens and Venetian blinds. This business was not profitable, and some time in 1940 appellee sought a discontinuance and this move caused the Roleson Company to contact Silver, a former employee, and to suggest that he apply to appellee for employment. Appellant applied by letter of May 17, 1940, this led to a response and to a later meeting of parties, and it was agreed that appellant was to handle the Roleson products on a commission basis, he to have 60 per cent of profit on business obtained and a $25 weekly drawing account.

Appellant continued in appellee's employ for about two years during which the business was not profitable, though he drew his $25 weekly, his commissions were much less than the total amount drawn. During his employment appellant had married and found that his income was not of sufficient proportion to maintain his new situation, so he sought to have the contract terminated and found appellees agreeable. According to appellant it was agreed that relations should be reversed, appellant to take over the Roleson business, and another meeting was arranged, to close details. At this meeting the account between appellant and appellee was presented and examined, and it developed that appellant had drawn on his weekly account $901.20 more than his commissions, and appellant was asked to give the company a note for the account stated, which he did.

Appellant contends that until the time he was requested to sign the note there had been no intimation that he would be expected to reimburse appellee to the extent of the excess of his drawing account, and the further contention as is above set out in his substituted answer. In his letter of application May 17, 1940, appellant after suggesting his ability to produce business,

wrote: "At the present time I would not be able to finance myself in new territory. Believe that in about ninety days I would be able to build up enough business to carry my own load from there. Think about $25 per week would cover all my expenses and I could get by. Then after that would rather work on a commission basis."

The letter containing the foregoing excerpt was introduced while the manager of appellee was on the stand. He was shown a copy of a letter of date May 18, 1940, addressed to appellant at Indianapolis and signed in type "Overhead Door Company," by the manager. The copy started by saying, "We have your letter of the 17th;" after discussing the situation and prospects, it reads: "In other words I think that we can arrange to take care of you until you have the account on a paying basis along the lines you outlined, and I think we can make you a proposition commission which will be attractive to you."

As to the correspondence between the parties, the fullest effect to be given them is that there was no actual agreement, and whatever suggestions were made were merged into the agreement when the parties met. The other copies were not of materiality; they purported to be letters passing between the Overhead and Roleson companies; not between appellant and appellee.

Only two persons testified, Mr. Ranard, Manager of the Overhead Company and the defendant. The former testified that at their meeting it was agreed that appellant was to have a commission of 60 per cent on the gross profit of the Roleson business, and was to have a drawing account to be charged against his commission. "This was the arrangement we had and books were kept on that basis every month." He said there was no question about the arrangement until some time in 1942, after appellant had worked for two years, and we both realized "he was not making good." Appellant wanted to take the account over and this was agreed, but "I told him I wanted his account squared before he left." The account was produced and gone over, adjustments made, and appellant signed the note. There was no question at the time whether he owed the Company; there was no hesitancy on his part in signing the

note. He said it was always understood he was working on commission, and his drawing account would be charged against his earned commissions. He knew they were being charged against it at all times. When the note was presented to him he made no objections to signing it.

.Appellant admits the signing of the note, but said when the matter was brought up, "I did not believe I owed this note; I didn't owe the balance because the agreement was a drawing account against the earned commissions. Mr. Ranard said that since the account exceeded the earned commissions he felt like the company was entitled to some kind of compensation, or some kind of a guarantee, and if I was going to take the account with me and get out of the Overhead Door Company * * * that if I wanted to take this account with me this note would represent the difference between this drawing account and the commissions earned; * * * that he could be instrumental in getting considerable business as the result of his influence * * and if I did receive such business he wanted to know if I would be willing to pay this note or to pay this difference. I stated that I would." He did not recall getting any business through any influence on the part of any one connected with the Company, and got very little business during the next few years, due to war conditions.

When demand was made for payment appellant says he told the manager, "I do not think I owe this note according to the original contract." On cross-examination he said that the two went over the account, and "I told him I did not believe I owed this balance because our arrangement was a drawing account against the earned commissions."

It is a little difficult to determine just what defense appellant undertook to rely upon, whether lack of consideration or failure of consideration or the agreement not referred to in the note. There was a consideration for the note since it represented the difference in the drawing account and 60 per cent of the profits on the business obtained. This was, according to both witnesses, a balance on an account stated, and not questioned as to amount due after adjustments were made, and we note that the account contained items which

appellant had purchased from or through appellee company.

As to the other alleged defense, we gather that the crux, as set up in the answer, was that by mutual mistake the second alleged agreement was not "inserted in or made a part of said note." There is a lack of proof showing that there was a mistake or mutual mistake, and the rule is that a promissory note imparts consideration. One who relies on the defense of mutual mistake must prove the allegation by clear and convincing proof, since it savors of a plea for reformation of the instrument involved. A mutual mistake occurs when both parties participate in the transaction and each labor under the same conception of the alleged agreement. Reeis v. Wintersmith, 241 Ky. 470, 44 S. W. 2d 609; Belknap v. Bank of Prospect, 259 Ky. 385, 82 S. W. 2d 504.

On the whole case we are of the opinion that appellant did not make good either of his alleged defenses, and it follows that the court correctly directed a verdict for plaintiff.

Judgment affirmed.