**Garland BRADSHAW, Appellant,**

v.

**Ann Bell Caldwell KINNAIRD and Virgil G. Kinnaird, Jr., Appellees.**

Court of Appeals of Kentucky.

Oct. 24, 1958.

Rehearing Denied Jan. 30, 1959.

**476**

James F. Clay, Danville, for appellant.

Pierce Lively, Danville, for appellee.

CLAY, Commissioner.

Plaintiff Bradshaw brought this action to recover part of the purchase price of a farm sold to him by defendants Ann and Virgil Kinnaird. The jury returned a verdict for defendants.

In 1950 plaintiff and one Divert purchased the farm from defendants for the sum of $80,000. A month later plaintiff bought Divert's interest. Under the Agricultural Adjustment Act of 1938, 7 U.S. C.A. § 1281 et seq., the federal administrative agency created thereby was empowered to set the acreage of tobacco which could be grown on a farm. In 1950 the records of the government office indicated that the farm in question had a 14.3 acre tobacco base. The evidence shows that both parties believed that the farm had such a tobacco base.

In the years 1951 and 1952 plaintiff was allotted a 14.9 acre tobacco base, and in 1953 he was permitted to raise 13.4 acres of tobacco. Thus, for the years 1951 through 1953 the farm had an average authorized tobacco yield of 14.4 acres.

For the year 1954 plaintiff's allotted tobacco acreage was substantially reduced, and this is the subject of the controversy. In the years prior and subsequent to 1950 the principal defendant, Virgil Kinnaird, had leased on a year to year basis a farm owned by the Cincinnati, New Orleans & Texas Pacific Railway which adjoined the farm in question. In 1954 it was discovered that the 14.3 tobacco base, applicable to plaintiff's farm, in fact included not only that farm but also the farm owned by the railway company and leased by defendants. Virgil brought this to the attention of the government office, which reduced the base of the plaintiff's farm by 34.9 percent, transferring such percentage to the farm owned by the railway. Plaintiff was then permitted to raise only 9.2 acres of tobacco on his farm. It is for this reduction in the tobacco base that the plaintiff seeks an adjustment in the price he paid for the farm.

Plaintiff based his suit on a number of theories: fraud; misrepresentation; quasi contract; unjust enrichment; and mutual mistake. However, because we believe that the facts support the theory of mutual mistake, it is not necessary to consider plaintiff's other contentions.

■ From the record it is clear that both parties believed that the farm had a 14.3 tobacco base. Since the base was actually applicable to both farms, there was an obvious mutual mistake. There is no doubt that the mutual mistake was one of a material fact. To a substantial degree the value of a tobacco farm is determined by the tobacco acreage that the federal agency permits the farmer to raise. The record leaves us with no doubt that if in 1950 it were known that the tobacco base was 9.2 rather than 14.3 acres, the value of the farm would have been appreciably less. Thus there was existent a mutual mistake of material fact.

■ In this jurisdiction mutual mistakes have long been recognized as being actionable. Neale v. Wright, 130 Ky. 146, 112 S.W. 1115; Belknap v. Bank of Prospect, 259 Ky. 385, 82 S.W.2d 504; Silver v. Overhead Door Co., 311 Ky. 650, 225 S.W. 2d 115. However, the usual remedies for a mutual mistake have been recision of the transaction or reformation of the contract or deed. In this action appellant sought neither, but rather sought to recover a sum not in excess of $15,450, representing the difference between $80,000, the price paid for the farm, and the value of the farm had it been known that it was a 9.2 acre tobacco farm. Thus plaintiff is seeking restitution for that part of the subject matter which he did not receive because of the mutual mistake.

No case has been cited which permits or denies restitution in a case similar to the one before us. However, the facts justify some form of relief. Plaintiff did not receive that for which he bargained, i. e., a 14.3 tobacco base. It is apparent that the purchase price would have been less if it were known at the time of the transaction that the then existent tobacco base was only two-thirds of 14.3. Since it would be impracticable to rescind the transaction and since no question of reformation is here presented, we must permit restitution or else leave plaintiff without a remedy.

Defendants contend that the tobacco base could have been lowered by the federal government at any time for a number of reasons not relevant to the mistake which did occur. In such a case the mutual mistake would then become irrelevant. But that is not what happened. The tobacco base was lowered because the mistake was discovered. Because of this mistake plaintiff did not receive that for which he bargained. To leave plaintiff without remedy would not only be unjust to him but would also result in a windfall to defendants. Assuming both parties to have been innocent, justice demands that some adjustment should be made. Plaintiff's right to relief falls within the broad scope of restitution. See Restatement, Restitution, Section 25.

■ Relief from mistake of this sort is an equitable matter. Hemphill v. New York Life Insurance Company, 195 Ky. 783, 243 S.W. 1040; Eastland v. Robinson, 233 Ky. 403, 25 S.W.2d 1028, 70 A.L.R. 365. In the latter case it was said, at page 1029 of 25 S.W.2d:

"A court of equity has no right to make or alter a contract to suit either party; but it will always relieve against a mistake by granting such relief as the ends of justice demand."

It is immaterial whether we base the right of recovery upon a theory of quasi contract (Williston, The Law of Contract, Vol. 1, page 9; Kellum v. Browning's Adm'r, 231 Ky. 308, 309, 21 S.W.2d 459) or unjust enrichment (Supreme Council Catholic Knights of America v. Fenwick, 169 Ky. 269, 183 S.W. 906; Tidwell v. O'Bryan's Adm'r, 297 Ky. 749, 181 S.W.2d 260).

■ We believe the trial court erroneously submitted to the jury the issue of defendants' liability for two reasons: First, this was an equitable issue which should have been decided by the court; and second, the facts established a mutual mistake and the court should have so found as a matter of law.

■ The difficult issue in the case is the amount plaintiff should be allowed by way of restitution. This should be determined by the Chancellor, although he may invoke the services of an advisory jury. The basic consideration is the value of the additional 5.1 acre tobacco base (the difference between 14.3 and 9.2) on this particular farm at the time it was purchased in 1950. This valuation must, of course, be related to the sale price of $80,000 with a 14.3 acre tobacco base. Thus, assuming the whole farm to have a reasonable market value of $80,000 with a 14.3 acre tobacco base in 1950, what lesser value would it have had with a 9.2 acre tobacco base? After this difference is determined, the defendants should be given credit for the value of the three years' use of the original base before the mistake was corrected.

■ At this point we may call attention to incompetent evidence that was admitted for the defendants. It pertained to the reasonable market value of the farm when sold to the plaintiff; some of defendants' witnesses testifying that it had a value then greatly in excess of $80,000. For the purposes of this suit, the fair market value of this farm, with a 14.3 acre tobacco base, was fixed at $80,000. If the plaintiff made a good bargain, any benefits received by him in this respect cannot be offset against his loss of the contemplated tobacco acreage.

The judgment is reversed, with directions to reopen and reconsider the question of damages, and to award judgment to the plaintiff for such damages by way of restitution as the evidence justifies.