**PRYOR'S RESTAURANTS INC., and First Kentucky Trust Co., Appellants,**

v.

**Thelma M. BELILES, Appellee.**

Court of Appeals of Kentucky.

Nov. 4, 1977.

Rehearing Denied Jan. 6, 1978.

B. Hume Morris, II, Greenebaum, Doll, Matthews & Boone, Louisville, for appellants.

Kenneth L. Anderson, Louisville, for appellee.

Before GANT, HOWERTON and WHITE, JJ.

GANT, Judge.

The appellants appeal from a judgment directing them to pay to the appellee the sum of $212.00 per month for life, credited with any sum previously paid.

This case evolved from the employment of the appellee by the appellant Pryor's Restaurants Inc. at one of its restaurants for many years, appellee having no written contract of employment. In May of 1969, Pryor's had established a pension plan, which plan was a voluntary plan and to which the appellee had made no contribution. Appellee was apparently the oldest member of the pension plan and had been under the plan for approximately two years when she was notified by the president of Pryor's, her nephew, A. C. Pryor, Jr., that they were thinking about replacing her. Mr. Pryor suggested that appellee might want to consider taking early retirement. Appellee became upset about this and contacted her attorney. Much was made in the briefs and oral arguments over whether the attorney had, in fact, talked with Mr. Pryor but we feel that this is of no consequence.

Eventually, the attorney for the appellee prepared a letter for the appellee to submit to Pryor's which read, in part, as follows:

This is also to request early retirement concerning the Pryor's DriveIn Restaurant, Inc. Pension Plan also administered by The Kentucky Trust Company, as Trustee. It is my understanding from Mr. Anderson's conversation with Mr. Klayer of Actuarial Services that you have requested that he compute the amount of my monthly pension based on early retirement and that he has computed that figure to be $212.00 per month. On this basis, I am requesting early retirement under the Pension Plan and would appreciate the Advisory Committee approving that early retirement and so advising The Kentucky Trust Company.

Subsequently, the attorney was advised by the Trust Company that it had received authorization from the Retirement Committee to commence monthly payments of $212.00 to the appellee and appellee did begin receiving checks in that amount from August, 1971, through June, 1975. Thereafter, Pryor's discovered that the actuary had made a mistake and immediately reduced the payments to $48.43.

The theory of the case, which was adopted by the lower court, was that the offer by the appellee in her letter of July 20, 1971, and the action of the corporation through its Pension Committee and by paying the monthly sum for some four years constituted a contract between the parties which could not be unilaterally altered or rescinded and that the appellants, jointly and severally, owed the appellee the sum of $212.00 per month for the rest of her life. We disagree.

Appellants urge the court that since Mrs. Beliles had no written contract of employment there was no consideration for the contract at all and that it must fail on these grounds. We do not feel it is necessary to consider that for the reasons which will be made clear hereafter. Assuming that there was a contract between the parties, it is obvious that this contract was based on mutual mistake, which mistake was not the fault of either party. The Kentucky courts have defined mutual mistake as follows:

A mutual mistake occurs when both parties participate in the transaction and each labor(s) under the same conception of the alleged agreement. *Silver v. Overhead Door Co.,* 311 Ky. 650, 225 S.W.2d 115 (1949). (Citing cases).

The courts further hold in this jurisdiction that mutual mistakes are actionable and that the usual remedies for mutual mistakes are rescission of the transaction or reformation of the contract. See *Bradshaw v. Kinnaird,* Ky., 319 S.W.2d 475 (1958) and cases cited thereunder. In 5 S. Williston, *Contracts,* § 1544, Page 4334 (1937), it is stated:

. . . a mistake vitally affecting a fact or facts on the basis of which the parties contracted renders their contract voidable by an injured party. That is, where the parties assumed a certain state of fact to exist, and contracted on the faith of that assumption, they should be relieved from their bargain if the assumption is erroneous, and the materiality of the state of facts is weighty evidence of the assumption.

In that work, at § 1557, Page 4361, it is stated:

Where reformation is possible, it is generally the only remedy permissible, since the mistake of the parties related to their expression only and to decree rescission and freedom from all obligation would be an unnecessary violation of their intent.

In the instant case we have a classic example of mutual mistake which was not the fault of or chargeable to either party and neither party was privy to the information occasioning the mistake. The actuary who handled the Pension Plan was solely responsible for the mistake, not either of the parties.

Additionally, we must examine the offer of Mrs. Beliles contained in her letter of July 20, 1971. In this letter she did not base her early retirement upon receiving the sum of $212.00 per month for life, although the evidence disclosed that this was her general understanding and that of Pryor's. However, the letter went on to state, "On this basis I am requesting early retirement *under the Pension Plan* and would appreciate the Advisory Committee approving that early retirement and so advising The Kentucky Trust Company."

It is the opinion of this Court that this adopted the Pension Plan by reference. In referring to the Pension Plan, we find the following:

A–7.1 Although it is the intention of the Employer that this Plan shall be continued and its contributions made regularly each year, this Plan is entirely voluntary on the part of the Employer and the continuance of the Plan and the payments thereunder are not assumed as a contractual obligation of the Employer. The Employer does not guarantee or

promise to pay or cause to be paid any of the benefits provided by this Plan.

A–7.2 Each Member, Retired Member, Totally and Permanently disabled Member, beneficiary or any other person who shall claim the right to any payment or benefit under this Plan, shall be entitled only to look to the Trust Fund for such payment or benefit and shall not have any right, claim or demand therefor against the Employer.

The letter and all the circumstances surrounding this case make it clear that both parties to this contract, if any, expected payment to be made from the Pension Plan. These two sections above quoted make it clear that all payments to the Pension Plan are entirely voluntary on the part of the employer, its continuance is not assumed as a contractual obligation of the employer, the employer does not guarantee the benefits provided by the Plan and the retired member is entitled to look only to the Trust Fund for payment and shall not have any right or claim against the employer. It is our opinion that the employer was totally within his rights, under the law of Kentucky and under the provisions of the Pension Plan itself, to reform the contract between the employer and the employee.

Accordingly, the judgment is reversed.

All concur.