## Supreme Council Catholic Knights of America v. Fenwick, et al.

(Decided March 21, 1916.)

### Appeal from Union Circuit Court.

1. Insurance—Benefit Association—By-laws—Enactment Subsequent to Contract—Effect—Section 679, Kentucky Statutes—Construction.—Section 679, Kentucky Statutes 1903, providing that the by-laws referred to in the policy or certificate of insurance should not be received in evidence or constitute a part of the contract unless printed in the contract or certificate attached thereto, applies to subsequently enacted by-laws, though the certificate or policy had been issued prior to the statute.

2. Constitutional Law—Insurance—Impairment of Obligation of Contracts—Reserved Legislative Power.—Where a special charter granted by a state to a fraternal benefit association reserved to the legislature the right to amend and alter the charter, and the association accepted it, the legislature could, without impairing the obligation of contracts, in violation of Const. U. S. art. 1, sec. 10, cl. 1, adopt statutes declaring that changes in by-laws of the association should be without effect unless attached to the certificate, though construed to apply to all incomplete contracts and to certificates in existence, and though the association reserved in the certificate the right to amend its by-laws.

3. Insurance—Fraternal Insurance—Assessments—Unlawful Assessments—Payment—Effect—Estoppel.—The mere fact that the holder of a certificate of a benefit association pays illegal assessments levied against his certificate in violation of his contract, rather than take the possible chances of having his certificate forfeited, does not estop him or his beneficiary from questioning the legality of subsequent similar assessments.

4. Insurance—Benefit Association—Contracts—Section 679, Kentucky Statutes 1903.—Section 679, Kentucky Statutes 1903, providing that the by-laws of a corporation, in order to be received as evidence or constitute a part of the contract, shall be printed in or attached to the certificate, does not apply to certificates issued prior to the statute, unless the by-laws were amended or changed while the statute was in force.

5. Insurance—Benefit Association—Illegal Assessments—Liability on Certificate.—When a member is suspended for the non-payment of an illegal assessment and the excess of the illegal over the legal assessments is sufficient to cover all assessments which might have been legally made during the life of the insured, and to continue the insurance in force until his death, the association is liable on the certificate.

6. Insurance—Benefit Association—Illegal Assessments—Finding of Fact—Evidence.—In an action to recover on a benefit certificate, evidence examined and held insufficient to show that the excess of the illegal assessments over the legal assessments was sufficient to cover all assessments that might have been assessed against the certificate during the life of the insured and to continue the insurance in force until his death.

7. Payment—Money Paid by Mistake—Recovery.—Whenever, by a clear or palpable mistake of law or fact, essentially bearing upon and affecting the contract, money has been paid without consideration, which, in law, honor or conscience, was not due and payable and ought not to be retained, it may be recovered.

8. Insurance—Payment—Money Paid by Mistake—Benefit Association—Illegal Assessments—Recovery.—Where the member of a benefit association is suspended for non-payment of illegal assessments, his beneficiary may recover the excess of the illegal over the legal assessments after deducting therefrom a sum sufficient to pay all assessments that might have been legally assessed

against the certificate, and to continue the insurance in force up to the time of the death of the insured.

9. Insurance—Benefit Association—Interest—When Not Allowed.— Where a member of a benefit association is suspended for non-payment of illegal assessments and subsequently dies, the beneficiary is not entitled to recover interest on the policy prior to the time of the bringing of the suit, when the petition fails to show that payment was demanded before the suit was brought.

ALLEN & MILLER and FREDERICK H. BACON for appellant.

DRURY & DRURY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Supreme Council Catholic Knights of America is a fraternal insurance society and under the control of a grand or supreme body. It secures members through the lodge system exclusively. It pays no commission and employs no agents, except in the organization and supervision of the work of local subordinate lodges or councils. It was granted a charter by the General Assembly of Kentucky on April 1st, 1880. Chap. 726, Vol. 2, Acts 1879. This charter was amended April 30th, 1888. Chap. 1325, Vol. 3, page 599, Acts 1887-1888. On April 9th, 1882, there was issued by the society to William F. Fenwick, a member thereof, a certificate of insurance for the sum of $2,000.00, in which his wife, Isabella Fenwick, was named as beneficiary. By the terms of this certificate the insured expressly agreed to pay all assessments, dues and fines assessed against him, according to the laws, rules and regulations of the supreme council, "which may now or hereafter govern the order." The certificate further gave the insured the right to surrender the certificate and receive a new one and to change the beneficiary therein designated. On September 1st, 1899, the insured, who had become indebted to Mason and Dyer for merchandise and for money advanced to pay the assessments on the certificate, applied to the society for a new certificate and asked that Mason and Dyer be substituted as beneficiaries in lieu of his wife. His wife consented in writing to the proposed change, and, on September 3rd, the change was authorized and agreed to by the local branch of the society. On September 16th, 1899, the supreme council granted a new certificate, in which Mason and Dyer were designated as beneficiaries. When the insured became a member of

the society he was thirty-two years of age. At that time the assessment rate, as fixed by the society's constitution and by-laws, was 80 cents per assessment where the member was between thirty and thirty-five years of age, 90 cents where the member was between thirty-five and forty years of age, and $1.00 per assessment where the member was between forty and forty-five years of age. In May, 1899, the supreme council changed the rate to $1.87 per assessment, which became effective July 1st, 1899. In August, 1904, the supreme council, fearing that the interests of the society and of its members were being jeopardized by the low rate then in force, and acting on the advice of a distinguished actuary, changed the rate from $1.87 per assessment to a flat rate of $10.24 per month. From the time the two certificates were in force the insured paid assessments 39 to 56, inclusive, at the rate of $1.00 each, assessments 57 to 667, inclusive, at the rate of 90 cents each, and assessments 668 to 804, inclusive, at the rate of $1.87 each, which kept the certificates in force up to November 1st, 1904. At that time the flat rate of $10.24 per month became effective and the insured paid thirty-three assessments at that rate. He failed to pay the thirty-fourth assessment, which was due August 13th, 1907, and was marked suspended. Thereafter he made no further payments, and he never applied for reinstatement. He died on May 15th, 1908.

This suit was brought by Isabella Fenwick and Mason and Dyer to recover not only the face of the policy, but the difference between the legal assessments which the company was authorized to collect and the illegal assessments which the insured was required to pay. They based their right to recover on the theory that the changes in the assessments were illegal and void, and that the sums actually paid by the insured were not only sufficient to pay the thirty-fourth assessment, if legally made, but all legal assessments up to the time of the death of the insured. The validity of the increases in the assessments is attacked on two grounds: (1) The by-laws making the changes were not attached to the certificate; (2) the meetings of the supreme council were not held in conformity to the statutes of Kentucky and the changes in the by-laws were not made in conformity to the constitution and by-laws. The law and facts were submitted to the court without the intervention of a

jury. The court held, as a matter of law, that the increases in the assessments were invalid, and, as a matter of fact, that the excess of the illegal assessments over what could have been legally assessed against the insured was sufficient to pay all legal assessments and continue the insurance in force up to the time of his death. Pursuant to these findings the court adjudged a recovery in favor of plaintiffs for the amount of the policy, but denied a recovery for the difference between the legal and illegal assessments. From the judgment so rendered defendant appeals and plaintiffs prosecute a cross-appeal.

Section 679 of the Kentucky Statutes is as follows:

"Application—Rules or Charter Referred to in Policy Must be Made Part of it—Fraternal Societies Exempt.—All policies or certificates hereafter issued to persons within the Commonwealth of Kentucky by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, or the by-laws, or the rules of the corporation, either as forming part of the policy or contract between the parties thereto, or as having any bearing on said contract, shall have such application, by-laws and rules, or the parts thereof relied upon as forming part of the policy or contract between the parties thereto, or as having any bearing on said contract, attached to the policy or certificate, or printed on the face or reverse side thereof, and unless either so attached and accompanying the policy, or printed on the face or reverse side thereof, shall not be received as evidence in any action for the recovery of benefits provided by the policy or certificates, and shall not be considered a part of the policy, or the contract between the parties. The policy or certificate, and the rules and regulations, shall be printed, and no portion thereof shall be in type smaller than brevier; Provided, however, that nothing in this section shall be construed as applying to evidence used in reinstatement of a policy or certificate. But the provisions of this section and this subdivision shall not apply to secret or fraternal societies, lodges or councils, which are under the supervision of a grand or supreme body, and secure members through the lodge system exclusively, and pay no commission, nor employ any agents, except in the organi-

zation and supervision of the work of local subordinate lodges or councils.''

As originally enacted in the year 1893, the statute contained no proviso exempting fraternal societies from its operation. The statute was amended in the year 1906 and the proviso making it inapplicable to fraternal societies then adopted.

The changes in the certificates were effected by by-laws enacted in 1899 and 1904, and, therefore, when the original statute of 1893 was in force and prior to the amendment of 1906 exempting fraternal societies from its operation. It is admitted that the by-laws were not printed in the certificates or attached thereto. The society contends that the statute is not applicable to certificates issued prior to its adoption, and, if so construed, it impairs the obligation of a contract executed before its enactment, and is, therefore, violative of section 10, article 1, of the Federal Constitution. We had occasion to consider both of these questions in the recent case of Hunziker v. Supreme Lodge K. of P., 117 Ky. 418, and (second appeal) 121 Ky. 33. We there held the statute applicable to certificates issued before its enactment but attempted to be changed by by-laws adopted while the statute was in force and prior to its amendment in 1906. We also held that this construction of the statute did not have the effect of impairing the obligation of contract. In discussing the latter question the court said:

''It is true that the statute itself excludes prior contracts from its operation. This meant completed contracts. There could have been no other purpose on the part of the legislature to exclude prior contracts of insurance than to respect their obligation as it then was. This mischief aimed at by the statute was to prevent fraud and oppression being practiced upon insured persons. For, although the insurer might be a co-operative concern, it was recognized that its governing body, whether representative or not, might overreach his understanding, and unjustly impose on him by secret regulations or by laws, made part of the contract by reference only. This pernicious practice had obtained to some extent. The idea was to curb it, to make it impossible in future. The provision in the old policy that it should be subject to by-laws then in force, or that might thereafter be adopted, left the contract open for amend-

ment in the future. How it was to be amended, further than it was to a 'rule or regulation' of the society, was not stated. Now the state, after that kind of open contract was made, has, by the statute alluded to, required in effect and intent, that all future engagements of insurance of this class should conform to a prescribed procedure, or else they should be void. It did not affect any previous contract, in so far as its obligation had been fixed. But we see no reason why the statute should not apply to alterations or changes of such contracts. Such alterations are in a sense new contracts, although it had been previously provided that they might be entered into. The new matter was never before an obligation. When it came to be attached to the original contract as an obligation of the parties, a police regulation of the state required certain prerequisite formalities before it became their act. This did not impair the obligation of the old contract, but dealt alone with the attempt to alter that contract.

"The new matter could not have been added at all, as was done, except for the provision of the old certificate that let it in. That provision gave the right to the insurer to alter the terms or conditions of the original agreement of the parties, at any time in the future, by the adoption of a new rule or regulation of the co-operative society affecting it. Now, if the statute took away that right, then it would seem to impair that obligation. But it did not. The right to alter or amend by-laws and rules, or to adopt new ones, is untouched by the statute. Hence it cannot be said that it was impaired. The new law, leaving the old contract precisely as it was found, laid hold of the parties, and said, in effect, 'When you make alterations of this contract, as you may do by the adoption of by-laws or rules, the sovereign power of this state, in the exercise of its duty to prevent oppression and fraud in insurance affected in this state, requires that a copy of such by-laws shall be indorsed on or attached to the certificate or policy of insurance.'

"It is pointed out in argument that as there is no provision in the statute for serving upon a policy-holder a copy of the after-enacted by-laws, and as he might refuse to surrender his policy or certificate, that such a copy might be attached or indorsed upon it, or such policy-holder might be abroad and inaccessible to either notice or contact, it could not have been contemplated

that after the delivery of such policy or certificate the statute would apply. Hence, it is reasoned the statute has not covered the case of policies issued before its enactment and made subject to by-laws adopted afterwards. The statute makes no provision, it is true, for serving a copy of such amended or new by-laws upon a policy-holder to whom a policy had been delivered. But this omission applies as well to new as to old policies, to those issued after as well as to those issued before the statute was passed. Either one of two courses must be deemed to have been contemplated by the legislature in that event: Either that such new by-laws could not be adopted, or that a service of a copy by offering to deliver and attach it to the policy would suffice. As the former would tend to cripple the power of such societies to impose their conditions by prudent amendments to their by-laws, as well as beget a variety of liabilities in the same class of contracts and among its members having equal rights in its assets and equally liable to its assessments, it must be rejected, because it would be at war with the whole scheme of mutual co-operative life insurance, which is recognized by the statutes as a legitimate business. On the other hand, as the view just discussed is rejected, it must be that an offer to do what one is bound to do, if tendered in season, and the offer is maintained, will always be accepted as a compliance with that part of the obligation. It will not do, though, to make the tender years after it should have been done, and, as in this case, after the liability of the insurer had been completed under the original contract.''

In addition to the foregoing, we may add that there is another ground for holding that the statute does not impair the obligation of a contract. The power to issue certificates of insurance like that involved in this case was conferred on the society by a special charter granted by the General Assembly of this state. Section 8 of that charter provides:

''The General Assembly reserves the right to amend and alter this charter.''

The very purpose of this reservation was to prevent the application of the rule announced in the case of Trustees of Dartmouth College v. Woodward, 4 Wheat (17 U. S.) 712, 4 L. Ed. 677, and to prevent a grant of corporate rights and privileges that would preclude

legislative interference with their exercise, if the public interest should at any time require such interference. When, therefore, the society accepted the charter, it did so with the distinct understanding and upon the condition that the Commonwealth reserved the power to regulate or change its method of doing business. Since section 679, as then in force, merely regulated the society's method of doing business, and was authorized by and enacted pursuant to the power reserved in the society's charter, it cannot be regarded as impairing either the obligation of the society's contract with the Commonwealth, or its contract with the insured. Greenwood v. Freight Co., 105 U. S. 13, 26 L Ed. 961; Tomlinson v. Jessup, 15 Wall 454, 21 L. Ed. 204; Berea College v. Commonwealth of Kentucky, 211 U. S. 45, 29 Sup. Ct. 33, 53 L. Ed. 81.

We may further add that in the recent case of Supreme Council Catholic Knights of America v. Logsdon, 108 N. E. 567, where the facts were almost identical with those of this case, the Supreme Court of Indiana, in a well-considered opinion, followed the ruling of this court in Hunziker v. Supreme Lodge K. of P., *supra*, and further held that section 679, as so construed, was not violative of section 10, article 1, of the Federal Constitution.

In this action the society makes the point that if the amended by-laws are not a part of the contract, then, for a like reason, the original by-laws which were in force when the certificate was issued cannot be regarded as a part of the contract. In reply to this contention it is sufficient to say that the statute does not apply to certificates theretofore issued, unless the by-laws, rules or regulations of the society were amended or changed while the statute was in force.

But it is insisted that the defense of estoppel is available in this case because the insured acquiesced in the increased assessments and paid them for a number of years. On this point, however, the authorities do not differ, and the rule is well established that the mere fact that the holder of a certificate of a benefit association pays illegal assessments levied against his certificate in violation of his contract, rather than take the possible chances of having his certificate forfeited, does not estop him or his beneficiary from questioning the legality of subsequent similar assessments. Benjamin v. Mutual

Reserve Fund Life Ass'n., 146 Cal. 34, 79 Pac. 517; Langdon v. Massachusetts Benefit Ass'n., 166 Mass. 316, 44 N. E. 226; Fort v. Iowa Legion of Honor, 146 Ia. 183, 123 N. E. 224; Supreme Council Catholic Knights of America v. Logsdon, *supra*. The basis of such holding is that the certificate holder, by making such payments, cannot be said to have acted fraudulently or wilfully to have done anything to mislead others to their prejudice.

Being of the opinion that the increased assessments were invalid because the by-laws by which the assessments were increased were not embraced in or attached to the certificate, it is unnecessary to consider any other ground on which the validity of the increased assessments is challenged.

Since the increased assessments were invalid, it follows that if the excess of the illegal assessments over the legal assessments was sufficient to pay all assessments that could have been legally assessed against the certificate in the lifetime of the insured, and to continue the certificate in force up to the time of his death, plaintiffs are entitled to recover on the certificate. The burden of showing this was on the plaintiffs. Since the number of assessments made under the rate of $1.87 appears, the excess of that rate over the legal assessments is a matter of simple calculation. There is nothing in the record, however, to show the number of deaths that occurred after the adoption of the flat rate of $10.24 per month. In the absence of definite proof of the number of deaths so occurring, it is manifest that the finding of the trial court was based on speculation instead of fact. The evidence not being sufficient to show that the excess of the illegal assessments over the legal assessments was sufficient to continue the certificate in force up to the time of the death of the insured, it follows that the trial court erred in so finding, and for this reason alone a new trial is awarded on the original appeal.

On the cross-appeal it is insisted that the trial court erred in denying plaintiffs a recovery for the excess of the illegal assessments over the assessments that might have been legally levied. It is the settled rule in this state, adopted at an early date and followed by a long line of decisions, that whenever, by a clear or palpable mistake of law or fact essentially bearing upon and affecting the contract, money has been paid without consid-

eration, which, in law, honor or conscience, was not due and payable, and which, in honor or good conscience ought not to be retained, it may and ought to be recovered. Ky. Title Savings Bank & Trust Co. v. Langan, 144 Ky. 46; Ray & Thornton v. The Bank of Kentucky, 3 B. Mon. 510; Titus v. Rochester German Insurance Co., 97 Ky. 574; Gratz v. Redd, 4 B. Mon. 178; McMurtry v. Kentucky Central R. R. Co., 84 Ky. 462. In such a case, it is not necessary to allege a mistake in express terms. It is only necessary to allege the facts, from which the conclusion of mistake inevitably follows. Gibson v. Ky. Grangers Mut. Ben. Soc., 8 R. 520.

Here the facts relied on clearly show that the society exacted the illegal assessments and the insured paid them in the belief that they were authorized by law. Under the circumstances, we conclude that the plaintiffs are entitled to recover the excess of the illegal over the legal assessments, after deducting therefrom a sum sufficient to pay all legal assessments and continue the insurance in force up until the death of the insured. It follows that the trial court erred in denying a recovery.

Another contention urged on the cross-appeal is that the trial court erred in allowing interest on the policy only from the time suit was brought. In view of the fact that it does not appear in the petition that any demand for payment was ever made prior to the bringing of the suit, we conclude that plaintiffs, even if entitled to recover on the policy, are not entitled to interest prior to the institution of the action.

Judgment reversed and cause remanded for a new trial consistent with this opinion.