# Southeastern Gas Co. v. Ferguson.

(Decided Nov. 20, 1936.)

**(As Modified on Denial of Rehearing June 18, 1937.)**

KIRK & WELLS for appellant.

HOWES & WALKER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing in part and affirming in part.

The Southeastern Gas Company has appealed from a judgment which awarded to appellee a $200 recovery against it and denied to it any relief upon a counterclaim for $650 it had asserted against appellee. Thus as to it the amount in controversy is $850, the sum of these two (Walter A. Wood Mowing & Reaping Machine Co. v. Taylor, 104 Ky. 217, 46 S. W. 720), and it is entitled to an appeal as a matter of right. Section 950-1, Ky. St.

The items for which appellee Ferguson sought recovery are:

(a) $100.00 rental on well 595 from May 1, '32 to that date in '33
(b) $100.00 " " " " " " " "33 " " " " '34
(c) $100.00 " " " " " " " "34 " " " " '35
(d) $100.00 " " " " " " " "35 " " " " '36
(e) $200.00 " " " 596 " Aug. 1, '32 " " " " '33
(f) $200.00 " " " " " " '33 " " " " '34
(g) $200.00 " " " " " " " '34 " " " " '35
(h) $200.00 " " " " " " " '35 " " " " '36
(i) $1,500.00 alleged damages to well 596.

The Southeastern Gas Company denied liability for any of the foregoing and asserted a counterclaim for the following:

(j) $50 overpayment on well 595 from May, '29 to May, '30
(k) $50 overpayment on well 595 from May, '30 to May, '31
(l) $200 paid by mistake on well 596 from Aug. '29 to Aug., '30
(m) $200 paid by mistake on well 596 from Aug., '30 to Aug., '31
(n) $150 paid by mistake on well 596 from Aug., '31 to Aug., '32

No attack has been made on the lease itself, seeking either its forfeiture or its reformation.

### Well 595.

The lease under which wells 595 and 596 were developed on the property of Mr. Ferguson contained this:

"Should any well not produce oil, but produce gas and the gas therefrom be sold off the said premises, the consideration to said first party for the gas from each well from which gas is marketed shall be as follows: At the rate of $200 per year while the well shows a pressure of 200 or more pounds upon being shut in five minutes in two inch pipe or thirty minutes in larger pipe; at the rate of $100 per year while the well shows a pressure of 100 or more pounds and less than 200 pounds upon being shut in five minutes in two inch pipe, or thirty minutes in larger pipe; at the rate of $50 per year while the well shows a pressure of less than 100 pounds upon being shut in five minutes in two inch pipe or thirty minutes in larger pipe; to be paid quarterly while marketed."

### Counterclaims (j) and (k)

The Southeastern Gas Company had paid on well 595 a yearly rental of $100, from May 1929, to May 1931. The pressure in this well, when determined in the manner provided in this lease during the time cov-

ered by these payments, was less than 100 pounds, being only 15½ pounds, and under the lease provision appellee was only entitled to $50 per year rental. This was shown even by the witnesses introduced by Ferguson. Thus Mr. Ferguson was overpaid on this well No. 595 for these two years, the extent of such overpayment being $50 for each year. The Southeastern Gas Company received no consideration for the $100 so overpaid.

In reversing a judgment that had denied a recovery under somewhat similar circumstances in Ky.-W. Va. Gas Co. v. Preece, 260 Ky. 601, 86 S. W. (2d) 163, 165, we cited this with approval:

"It is the settled rule in this state, adopted at an early date and followed by a long line of decisions, that whenever, by a clear or palpable mistake of law or fact essentially bearing upon and affecting the contract, money has been paid without consideration, which in law, honor, or conscience was not due and payable, and which in honor or good conscience ought not to be retained, it may and ought to be recovered."

It is admitted the pressure on well No. 595 was too low to entitle Ferguson to any more than $50 per year for its rental during these two years and that he was paid by the Southeastern Gas Company $100 per year. Ferguson knew this well was low in pressure, for he wrote the company this letter:

"Redbush, Ky., August 4, 1931.
 "Southeastern Gas Company,
 "Charleston, W. Va.
"Dear Sir:

"You may reduce well rental on well No. 595 located on Lease No. 2183 from One Hundred Dollars annual rental to $50.00 annual rental for one year only, beginning with the payment due November 22, 1931.
 "Very truly yours,
  "[Signed]        Ora Ferguson."

He does not plead or rely on that letter as a settlement or compromise of the matter, neither does the company. Ferguson in his claim (a) is still asking for rental at the old rate. So the most we can make of this

letter is that it is an unaccepted offer of compromise. We can find nowhere any reduction of rental that was made because of it.

Ferguson is contending that the Southeastern Gas Company cannot recover on its counterclaims (j) and (k) because at the time these payments were made the Southeastern Gas Company had in its office, so he contends, a report that showed this well to have had only a seven pound pressure.

Why this report itself was not put in evidence we do not know. The attorney for the Southeastern Gas Company had this report in his hand when he was interrogating these witnesses, and Mr. Rockhold says in his evidence: "According to the report I found in a file prepared by Mr. Thomas, the pressure of this one well was only seven pounds upon being shut in five minutes in a two-inch pipe."

The date of this seven-pound test is given in this record as June 22, 1931, so we cannot see how it can be seriously contended that the Southeastern Gas Company knew of this low pressure when it, in 1929 and 1930, made the overpayments upon which it bases its counterclaims (j) and (k).

A later test showed a pressure on this well No. 595 of 24 pounds and the 15½ pounds' pressure we mentioned in the earlier part of this opinion was obtained by adding 7 and 24, and dividing the result by two.

To be entitled to a rental of $100 per year on this well, Ferguson would have to have some evidence somewhere that this well at the time these rentals were paid had a pressure of 100 pounds or more, and he has none. All the evidence is the other way. By mistake the Southeastern Gas Company paid him $50 per year too much, and we can see no reason it should not have its counterclaims (j) and (k) for such overpayments subject to a reduction of $36.07 which the Southeastern Gas Company admits it owes for the rental of well No. 595.

These two items of $50 each should have been allowed the Southeastern Gas Company, subject to a credit of $36.07.

Counterclaims (1), (m), and (n) on
Well 596.

These three counterclaims aggregate $550, and the

Southeastern Gas Company insists it should recover of Ferguson this $550, because the gas produced by this well is not marketable, and none was marketed from it.

The gas produced by this well is so highly charged with hydrogen sulphide that it has no commercial value. It has a very disagreeable odor and inflames the eyes of men who work about it, it is unsalable and it cannot be made salable, and for this reason the Southeastern Gas Company contends it received no consideration for this $550 and should have it back. We are persuaded this position is sound, and for the reason given above this money should be repaid and the court erred in not allowing this $550 counterclaim. See Conley v. Boyd Oil & Gas Co., 220 Ky. 753, 295 S. W. 1025; and Henderson Co. v. Thompson, 57 S. Ct. 447, 81 L. Ed.—,will be of interest.

### Claims (a), (b), (c), and (d) on Well 595.

These claims aggregate $400, and are for rentals on Well 595 from May, 1932, to May, 1936, at $100 per year. The court allowed Ferguson $50 per year. This is incorrect except as to $36.07.

This $50 per year, after May 18, 1933, should not have been allowed for the reasons stated in Southeastern Gas Company v. Estepp,—Ky. —, — S. W. (2d) —, a companion case, and this day decided. The pump at Redbush had been stopped. This well had not pressure enough to produce gas unless this pump was running. There was no gas then being marketed from this field. We are advised in brief that the market has now been reopened and nothing said in this opinion shall affect the rentals of well No. 595 after such reopening except the rental shall be $50 per year until its production shall increase.

Mr. Ferguson's demands for the half of claims (a), (b), (c), and (d), and all his claims (e), (f), (g), (h), and (i) were denied him by the trial court, and he seeks to present them on a cross-appeal which was granted him, but he had filed no motion and grounds for a new trial, and the position of an appellee, in an ordinary action as this one is, who has not moved for a new trial and has obtained a cross-appeal in this court, is exactly the same as that of an appellant who has made such an omission, or as it is stated in 3 C. J. p. 962,

"where an appellee did not move for a new trial, his cross appeal cannot be considered." See Baskett v. Crossfield, 190 Ky. 751, 228 S. W. 673; Asher v. Helton, 101 S. W. 350, 31 Ky. Law Rep. 9; Louisville & N. R. Co. v. Whitehead's Adm'r, 73 S. W. 1128, 24 Ky. Law Rep. 2315; Fite v. Briedenback, 127 Ky. 504, 105 S. W. 1182, 32 Ky. Law Rep. 400; Hilton v. Com., 127 Ky. 486, 105 S. W. 956, 32 Ky. Law Rep. 377; Snyder v. Howard's Adm'x, 251 Ky. 592, 65 S. W. (2d) 477. "A judgment rendered in the circuit court may be reversed, vacated or modified, either by it or by the Court of Appeals." Section 513 of Civil Code of Practice. That provision would indicate the circuit court must have the first opportunity to act and it has been our practice to accord it that right.

In Dils v. Adkins, 11 Ky. Opin. 298, we held:

"When an error is committed by the trial court, a party against whom it is committed can not have the error passed upon by the Court of Appeals, without first bringing the matter before the trial court by motion for a new trial and giving that court an opportunity to correct the error."

Motion for a new trial of an ordinary action, tried by court without a jury (as this one was), is necessary to present questions relied on for reversal. First National Bank v. Williams Feed Co., 214 Ky. 31, 282 S. W. 551; Henderson v. Dupree, 82 Ky. 678; Chapman v. Majestic Collieries Co., 216 Ky. 652, 288 S. W. 299.

If the sum for which a cross-appeal is sought is so small the circuit court could not have granted an appeal from it, then a cross-appeal may be allowed without a motion and grounds being filed. See Fite v. Briedenback, 127 Ky. 504, 105 S. W. 1182, 32 Ky. Law Rep. 400.

Without a motion and grounds for a new trial, where the amount denied appellee is large enough for the trial court to grant an appeal, no error that occurred on the trial can be presented on cross appeal, hence in this case so far as the cross-appeal is concerned the only question is: Do the pleadings and evidence support the judgment? The answer is "Yes."

Ferguson's claim for (a), (b), (c), and (d) is based on the idea that the yearly rental on well No. 595 should

have been $100 per year, a question we have already decided against him.

His claims (e), (f), (g), and (h) were for rentals of well No. 596, the one producing gas containing hydrogen sulphide in such quantities as to make it unmarketable, a question decided against him, supra.

His claim (i) is for damages done to well No. 596 by drilling it deeper and bringing into it the hydrogen sulphide gas that rendered its product unsalable, but a complete answer to this claim is that this drilling was not done by the Southeastern Gas Company, but by the Carroll Oil & Gas Company.

None of these nine claims had any merit if proper steps had been taken to present them here.

On direct appeal the judgment for Ferguson and against the Southeastern Gas Company is reversed, and it is awarded a new trial to be had in conformity to this opinion. On cross-appeal the judgment is affirmed.