## PHOENIX INDEMNITY CO.

### v.

### STEIDEN STORES, Inc.

Court of Appeals of Kentucky.

March 26, 1954.

Rehearing Denied May 28, 1954.

Woodward, Hobson & Fulton, L. Lyne Smith, Jr., Louisville, for appellant.

S. L. Greenebaum, Greenebaum, Barnett & Carroll, Louisville, for appellee.

WADDILL, Commissioner.

Phoenix Indemnity Company sued appellee, Steiden Stores, Inc., to recover a portion of a sum of money paid appellee for an insurance loss. The suit was based upon the theory that there was an overpayment due to a mistake of fact as to which clause of the insurance policy was

applicable. From a judgment dismissing its petition, Phoenix appeals.

In March, 1948, Phoenix issued to Steiden Stores a "comprehensive dishonesty, disappearance, and destruction policy" covering certain property in appellee's stores in Louisville. Among other things this policy provided for indemnification up to $10,000 for the loss of money or securities "caused by the actual destruction, disappearance or wrongful abstraction thereof." However, the policy contained the provision that:

> "Insuring Agreement II shall not apply to loss, damage or destruction caused or contributed to by * * * any dishonest, fraudulent or criminal act, other than Robbery or Safe Burglary or attempt thereat, committed by any Employee, director or trustee of the Assured; * * *."

Losses occurring as a result of fraudulent or dishonest acts of employees, acting alone or in collusion with others, were covered in Insuring Agreement I of the policy, but the maximum coverage for such losses was $2,500.

Sometime during the night of October 4, 1948, one of the Steiden Stores in Louisville was entered, the safe opened, and the sum of $4,598.20 was stolen. It is conceded by the parties to this action that the theft did not constitute robbery or safe burglary as defined in the policy. The police investigated the theft and reported that persons unknown had entered the store and opened the safe. Agents of the appellant also investigated the matter and orally questioned all the employees of the store concerning the loss. These investigations revealed no evidence indicative of guilt on the part of any particular person. Subsequently, Steiden filed a proof of loss statement to the effect that an unknown person or persons had entered the store, opened the safe, and stolen its contents. Phoenix, after receiving this statement, paid Steiden Stores the sum of $4,598.20 in January, 1949. In November, 1950, William Louden, who had been an employee of Steiden at the time of the burglary, confessed that he had opened the safe with a set of duplicate keys which he had made from soap impressions of the store manager's keys, and had committed the theft.

Upon learning of Louden's confession, Phoenix brought this suit to recover the portion, in excess of $2,500 of the sum it had paid Steiden Stores.

The sole issue is whether, under the facts set forth, the insurance company may recover sums paid Steiden in excess of liability on the insurance contract.

The basic rule as stated in the note found in 167 A.L.R., p. 472, is:

> "An insurer who made a payment under an erroneous belief induced by a mistake of fact that the terms of the insurance contract required such payment is entitled to restitution from the payee."

In Supreme Council Catholic Knights of America v. Fenwick, 169 Ky. 269, 183 S.W. 906, 910, this Court said:

> " * * * It is the settled rule in this state, adopted at an early date and followed by a long line of decisions, that whenever, by a clear or palpable mistake of law or fact essentially bearing upon and affecting the contract, money has been paid without consideration, which in law, honor, or conscience was not due and payable, and which in honor or good conscience ought not to be retained, it may and ought to be recovered. * * *".

See also Bituminous Casualty Exchange v. Ford Elkhorn Coal Co., 243 Ky. 456, 48 S. W.2d 1057.

Although as a general proposition it is well settled that recovery may be had of money paid under a mistake of fact, exception has been made in certain types of insurance cases in some jurisdictions. This exception is called the "assumption of risk" theory.

This theory may be stated briefly as follows: Where the insurer makes a mis-

take as to the existence of a material fact, although the insurer recognizes the possibility of its nonexistence, and is fully conscious that there is an uncertainty as to whether or not the money is due, voluntarily makes the payment at the request of the beneficiary, it will be assumed that the payment is made to avoid difficulty which might arise from its nonpayment. Jurisdictions which follow this rule hold that the insurer may not recover money paid because it has assumed the risk that the apparent fact situation may later be discovered to be different from the actual fact situation. This rule has been applied in Iowa: New York Life Ins. Co. v. Chittenden & Eastman, 134 Iowa 613, 112 N.W. 96, 11 L.R.A.,N.S., 233, 120 Am.St.Rep. 444; New York: National Life Insurance Co. v. Jones, 1 Thomp. & C. 466, affirmed, 59 N.Y. 649; and Wisconsin: Meeme Mut. Home Protection Fire Ins. Co. v. Lorfeld, 194 Wis. 322, 216 N.W. 507. See 167 A.L.R., p. 476.

The contrary view is represented by Pilot Life Ins. Co. v. Cudd, 208 S.C. 6, 36 S.W.2d 360, 168 A.L.R. 463. In this case an insurance company paid the beneficiary of a life insurance policy upon the mistaken belief that the insured was dead. The insured was reported missing at sea in January, 1943, and was presumed dead by the Maritime War Emergency Board in May, 1943. The insurance company paid the beneficiary of the policy in June, 1943, and in August, 1943, the insured was discovered to be a prisoner of the Japanese. The court in that case allowed the company to recover the money paid the beneficiary upon the theory that money paid upon misapprehension of facts belongs in equity and good conscience to the person who paid it. In disposing of the argument that the payment was in the nature of a compromise of a doubtful liability, the court said that both parties had the same information and had proceeded upon the same mistake of fact. Thus there was no intent to compromise.

Since this Court has never ruled on this precise question, the learned trial judge felt free to adopt the "assumption of risk" theory as a basis for disallowing recovery on the part of Phoenix Indemnity Company. It is our opinion, however, that there is little or no justification for making this exception to the rule announced in Supreme Council Catholic Knights of America v. Fenwick, 169 Ky. 269, 183 S.W. 906.

We are in accord with the view expressed in the annotation accompanying the Cudd case in 167 A.L.R., at pages 470–493, to the effect that, in applying the "assumption of risk" theory the courts actually have been making a judicial determination that the insurer and the recipient of the payment have entered into a compromise, where no real compromise has been made. The fact that the insurer pays the full amount of the claim, plus the fact that the insurer is ignorant of the mistake, is evidentiary of a lack of any intention to compromise the claim.

In our opinion, should we adopt the "assumption of risk" theory, insurance companies would be inclined to delay payment of claims, thus forcing the beneficiary to resort to litigation. We believe the rule we are adopting will avoid needless litigation and encourage prompt payment of insurance claims. For these reasons we decline to apply the so-called "assumption of risk" theory where there has been no actual compromise of the claim. For the reasons stated, we think the court erred in dismissing appellant's petition.

Judgment reversed.