*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0351p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

STATE FARM AUTOMOBILE INSURANCE
COMPANY,
         *Plaintiff-Appellee/Cross-Appellant*
                    (13-5028 & 13-5059),

                                                        Nos. 13-5028/5059

         *v.*

NEWBURG CHIROPRACTIC, P.S.C. and CANE
RUN CHIROPRACTIC, P.S.C.,
                    *Defendants* (13-5028),
         *Defendants-Appellees* (13-5059),

MICHAEL PLAMBECK,
         *Defendant-Appellant/Cross-Appellee*
                    (13-5028 & 13-5059).

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:06-cv-00281—Charles R. Simpson III, District Judge.

Argued: October 10, 2013

Decided and Filed:  December 18, 2013

Before:  BOGGS and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Kenneth Richard Stein, MATTHEWS, STEIN, SHIELS, PEARCE, KNOTT EDEN & DAVIS, L.L.P., Dallas, Texas, for Appellant/Cross-Appellee Plambeck and Appellees Newburg and Cane Run.  Benjamin G. Kemble, JONES, ANDREWS & ORTIZ, P.C., San Antonio, Texas, for Appellee/Cross-Appellant. **ON BRIEF:** Kenneth Richard Stein, MATTHEWS, STEIN, SHIELS, PEARCE, KNOTT EDEN & DAVIS, L.L.P., Dallas, Texas, for Appellant/Cross-Appellee Plambeck and Appellees Newburg and Cane Run.  Benjamin G. Kemble, David V. Jones, JONES, ANDREWS & ORTIZ, P.C., San Antonio, Texas, John M. Bush, QUINTAIROS, PRIETO, WOOD & BOYER, P.A., Louisville, Kentucky, for Appellee/Cross-Appellant.

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

SUTTON, J., delivered the opinion of the court, in which CLELAND, D.J., joined, and BOGGS, J., joined in the result.  BOGGS, J. (pg. 10), delivered a separate opinion concurring in the judgment.

————————————

**OPINION**

————————————

SUTTON, Circuit Judge.  Michael Plambeck owned two chiropractic clinics in Kentucky that treated patients injured in car accidents, including some of State Farm's customers.  All of the treating chiropractors were licensed to practice in Kentucky.  Plambeck, however, was not.  Plambeck assumed that he did not need to keep his Kentucky license because he was the owner of the facility and did not treat any patients in the State.  State Farm, on the other hand, assumed that Plambeck had a license because Kentucky law required chiropractic practitioners *and* owners of chiropractic clinics to hold one.  For years, Plambeck continued to operate his facilities, and for years State Farm continued to pay bills for the chiropractic treatments of its insureds.  Throughout this period of time, neither party confirmed the accuracy of these assumptions.

Both parties eventually learned that their assumptions were false.  That discovery led to this question:  May State Farm recover more than $500,000 paid to Plambeck's clinics over four years even though all of the patients received the chiropractic services they requested?  We conclude that it may not.

I.

During the years covered by this dispute, Plambeck was a licensed chiropractor *somewhere*.  He just was not licensed as a chiropractor in Kentucky.  From 1993 until May 2005, Plambeck allowed his Kentucky chiropractic license to lapse.  During that same period, he was the sole owner of two chiropractic clinics in the State:  the Newburg clinic and the Cane Run clinic.  Plambeck never treated patients at the two clinics.  He instead hired licensed Kentucky chiropractors who treated all of the patients.  That did

not free him from responsibility under Kentucky's chiropractic-licensing laws, however, because those laws also require owners to hold a license.  Ky. Rev. Stat. § 312.145(3).

Many of the clinics' patients over the years sought treatment for injuries arising from car accidents.  And some of the patients carried car insurance through State Farm.  Because Kentucky law requires it, State Farm's car insurance policies provide no-fault coverage for injuries resulting from car accidents.  *See id.* §§ 304.39-020(2), 304.39-030(1).  Covered individuals thus may obtain chiropractic treatment under these plans.  Even better for the patients, Kentucky law requires State Farm to pay for chiropractic services directly if an insured instructs them to do so.  *Id.* § 304.39-241.  Many patients did just that, and that is how State Farm came to pay Plambeck's clinics hundreds of thousands of dollars in medical bills even though State Farm and the clinics had no contractual relationship with each other.  So far as the record shows, none of the State Farm patients complained about the services they received from these clinics.

State Farm paid the bills submitted to it by the clinics without ado from 2000 until mid-2004.  When State Farm discovered that Plambeck lacked a Kentucky license, it stopped paying the clinics and sued Plambeck to recover all payments since 2000.

The district court granted summary judgment to State Farm.  Because State Farm mistakenly believed that Plambeck had a Kentucky license and would not have paid the bills his clinics submitted had it known otherwise, the court held that the insurance company was entitled to recoup any amounts it paid stemming from the mistake under Kentucky law.  The court awarded State Farm $557,124.78 in damages.

II.

A single principle unifies Kentucky common law claims for recovery of funds mistakenly paid:  unjust enrichment.  *See Tucker v. Denton*, 106 S.W. 280, 282 (Ky. 1907).  One person may not profit from another's innocent blunder.  *See Ky. W. Va. Gas Co. v. Preece*, 86 S.W.2d 163, 165–66 (Ky. 1935) (collecting cases).  Thus, if one party gives another money based on the misapprehension that he must do so, the courts will

use their equitable powers to undo the mistaken transaction.  *See McMurtry v. Ky. Cent. R.R.*, 1 S.W. 815, 815 (Ky. 1886); *see also Scott v. Bd. of Trs. of New Castle*, 116 S.W. 788, 789–90 (Ky. 1909).

Mistaken payment cases come in two types.  The first is tied to a contract.  If one party to a contract pays money to another party to the same contract based on a false factual or legal premise affecting her contractual duties, she may recover the funds.  *See Phoenix Indem. Co. v. Steiden Stores*, 267 S.W.2d 733, 734 (Ky. 1954).  The second covers a broader spectrum of misapprehensions.  If one person pays another based on a false assumption that the money is due—if in Kentucky's phrasing the money is paid "without consideration[] and not being due, either in law or conscience"—the court may force the recipient to return the money.  *McMurtry*, 1 S.W. at 815; *see also Gratz v. Redd*, 43 Ky. (4 B. Mon.) 178, 190 (1843); *Riverside Ins. Co. v. McDowell*, 576 S.W.2d 268, 269 (Ky. Ct. App. 1979).

In trying to recover its payments to the clinics, State Farm says that it mistakenly believed the clinics had a properly licensed owner and that it would not have made the payments had it known otherwise.  Because State Farm and the clinics never had a contractual relationship, the first category of mistake cases do not cover it.  That leaves the second type of case, requiring State Farm to show that it paid money to the clinics not due to them "either in law or conscience."  *McMurtry*, 1 S.W. at 815.  That is a high bar, and State Farm has not cleared it.

State Farm never credibly explains how any misapprehension about the clinics' license affected *its* duty to pay for treatments provided to its policyholders.  Even if we assume that the contracts between the clinics and the State Farm policyholders violated Kentucky public policy, as State Farm urges, that does not establish State Farm's right to obtain the services for free.  At most, the licensing problem affected the *policyholders*' legal duty to pay for the clinics' services, not State Farm's.  State Farm's legal duty to pay for these services arose under Kentucky statutory law, not under a contractual relationship with the clinics.  And State Farm's statutory duty requires it to "honor the written direction of benefits provided by an insured" specifying how to

"direct the payment of benefits among the different elements of loss," Ky. Rev. Stat. § 304.39-241—elements of loss that include expenses incurred for "medical care, physical rehabilitation, rehabilitative occupational training, licensed ambulance services, and other remedial treatment and care. . . . includ[ing treatments rendered by] all healing arts professions licensed by the Commonwealth of Kentucky," *id.* § 304.39-020(5)(a).

Perhaps if State Farm's insureds had not directed the insurance company to pay for these services, no payment might have been due. Who knows? But that is not what happened. All relevant policyholders received the chiropractic treatment they asked for, and they directed State Farm to make payments to the clinics for these treatments. In light of that directive, Kentucky law required State Farm to pay for the services. To be sure, Kentucky law with respect to retaining mistakenly paid money—that which "in law or conscience" they should not keep—suggests a continuum of possibilities, not a North Star. But State Farm sits at the far end, the least promising end, of that continuum when it claims a right to obtain the windfall of receiving medical treatment for its policyholders in fact without the duty to pay for it in law.

One other premise of State's Farm argument deserves mention. Its void-against-public-policy argument assumes that the policyholders themselves (or State Farm standing in their shoes) could now recover the money they paid the clinics for services actually provided. As a general rule, a party may not recover money paid to satisfy obligations in a void contract if "there is no proof that the services which were rendered to him were defective or that he in any other way did not receive value for the money which he paid." *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 387–88 (S.D.N.Y. 2002) (dismissing a claim for unjust enrichment similar to this one on that ground); *cf. City of Louisville v. Zanone*, 58 Ky. (1 Met.) 151, 153–54 (1858) (concluding that money mistakenly paid in accordance with a void ordinance could not be recovered in restitution where the party seeking restitution "is enjoying a benefit from the work and labor expended"). "There is no unjust enrichment if the claimant receives the counterperformance specified by the parties'

unenforceable agreement." Restatement (Third) of Restitution and Unjust Enrichment § 32(2). The policyholders in this instance received what they bargained for: treatment by chiropractors, indeed treatment by licensed chiropractors. That the clinics' owner was unlicensed violated Kentucky law, to be sure, but it did not affect the bargained-for exchange between each patient and each chiropractor.

Nor does it make a difference that, had State Farm declined to pay for the services in the first instance, Plambeck might not have been able to recover the money in court because his license had lapsed. That is a far cry from compelling the return of four years' worth of payments for services actually rendered. In the words of Judge Cardozo: "[Although t]he law may at times refuse to aid a wrongdoer in getting that which good conscience permits him to receive[,] it will not for that reason aid another in taking away from him that which good conscience entitles him to retain." *Schank v. Schuchman*, 106 N.E. 127, 129 (N.Y. 1914); *see also Zanone*, 58 Ky. (1 Met.) at 153 ("If it appear[s] that the party paying has received and enjoyed a benefit or consideration, he will not be aided by a court of equity in recovering back that which he has paid, but which he could not have been compelled to pay, had he resisted at the outset.").

That conclusion also makes sense in the context of a licensing statute that already sets penalties for violations of its terms but conspicuously does not provide for a civil remedy, much less one to the tune of a half-million dollars. *See* Ky. Rev. Stat. § 312.991(1). The licensing statute instead provides only criminal penalties—a maximum $500 fine or imprisonment for six months or both—for each licensing offense. *Id.* As the Kentucky Supreme Court explained in interpreting another statute, "[i]t is a primary rule of statutory construction that the enumeration of particular things excludes the idea of something else not mentioned." *See Smith v. Wedding*, 303 S.W.2d 322, 323 (Ky. 1957). Other courts have followed this path. *See Van Zanen v. Qwest Wireless, LLC*, 522 F.3d 1127, 1131 (10th Cir. 2008) (refusing to order an unlicensed professional to return already made payments in part because "recognizing a claim for unjust enrichment would provide a remedy not intended by the licensing statute"); *Comet*

*Theatre Enters.*, 195 F.2d at 81 (declining to disgorge payments made to an unlicensed contractor where the licensing statute did not specify such a remedy).

A contrary result, it seems to us, would promote unjust enrichment, not prevent it, or at least would create more unjust enrichment than it would alleviate. As the situation now stands, State Farm paid for chiropractic services and its customers received those services from licensed physicians. Everyone got what they wanted. State Farm now asks us to award it more than $500,000, to make Plambeck the best of neighbors—the insurer of State Farm—all because the company discovered (belatedly) that Plambeck let his license lapse. That remedy won't help the patients that the licensing statute was meant to protect. And it won't prevent unjust enrichment. "[C]ourts are normally not in the business of creating an inequitable situation where one does not already exist." *Schlueter v. Latek*, 821 F. Supp. 2d 1079, 1082 (E.D. Wis. 2011).

State Farm's contrary rule would undercut the objectives of licensing statutes in some instances and incentivize negligent conduct in others. A corporation could neglect to check the licensing status of the contractor it hired to renovate its storefront only to benefit from this oversight later by recovering payments made on its void contract once construction is complete, saving hundreds of thousands of dollars in construction costs. *See Comet Theatre Enters.*, 195 F.2d at 81–83. Or a developer could hire an architect licensed in Michigan to design condominiums in Idaho where he is not licensed, discovering after the condominiums are designed, built and sold, that he may recover everything paid to the unlicensed-in-Idaho architect and double his profits. *See Farrell v. Whiteman*, 200 P.3d 1153, 1156–62 (Idaho 2009). A corporation could employ an insurance broker unlicensed in its State, obtain necessary insurance for a number of years, and then (once it got around to checking the broker's license) could recoup all the insurance payments it previously made on the back end as a reward for its lax investigation on the front end. *See Van Zanen*, 522 F.3d at 1128–33. Or, in a slight twist on this case, an insurance company could ignore the licensing status of the clinics from which its policyholders are receiving treatment, pay for those treatments at the time of

service, then seek restitution for all payments made years after the fact. None of this is hyperbole, as demonstrated by the recoupment efforts in this case and the other three cited cases.

Pointing to *Phoenix Indemnity Co. v. Steiden Stores* and *Riverside Insurance Co. v. McDowell*, State Farm claims that Kentucky law compels recovery under these circumstances. 267 S.W.2d at 733; 576 S.W.2d at 268. Not true. Both cases apply the same general rule we have applied. Under Kentucky law, a person may recover money paid due to a mistake of law or fact if the money was not due in law or conscience. Applying that rule, *Phoenix Indemnity* held that an insurance company could recover money it paid to an insured where it was mistaken about a key fact that significantly affected the amount the insurance contract obligated it to pay. 267 S.W.2d at 734–35. And *Riverside Insurance* allowed an insurance company to recover money it paid under the mistaken belief that the law required it to cover a larger amount of personal injury damages than it actually did. 576 S.W.2d at 269. Here, by contrast, State Farm was not mistaken about whether it owed Plambeck money for his clinics' services; it was mistaken about whether it could have avoided these obligations by refusing to pay, knowing that the courts might well deny Plambeck recovery for public policy reasons. This is not the kind of mistake that Kentucky courts will remedy in equity. *See Zanone*, 58 Ky. (1 Met.) at 153.

State Farm persists that Plambeck should not be allowed to retain the payments it made because he acted illegally when he owned a chiropractic clinic in Kentucky without a license. This observation is entirely true, and nothing in our opinion should suggest that Plambeck was not in the wrong. To the contrary: For all we know, he still may face criminal sanctions for his conduct. *See* Ky. Rev. Stat. § 312.991(1). But we are not asked to decide whether Plambeck acted wrongly. We are asked to decide whether State Farm brought a viable civil claim to recover payments made. The answer to the latter question and the former are not inexorably intertwined. Indeed, as shown, the existence of criminal penalties in the licensing statute combined with the absence of civil remedies suggests that State Farm should not recover. *See Smith*, 303 S.W.2d at

323 ("It is a primary rule of statutory construction that the enumeration of particular things excludes the idea of something else not mentioned."); *see also Comet Theatre Enters.*, 195 F.2d at 81.  In the last analysis, State Farm's cause of action fails as a matter of law.

III.

In view of this disposition of State Farm's mistake claim, the other issues raised by the parties fall by the wayside.  State Farm cannot recover funds paid to the later-formed corporate clinics that Plambeck owned for the same reasons it cannot recover funds paid to Plambeck as a sole proprietor.  And State Farm's allegations of error in the district court's damage award are now moot.

IV.

For these reasons, we reverse in part and affirm in part.

---

**CONCURRENCE IN THE JUDGMENT**

---

BOGGS, Circuit Judge, concurring in the judgment only.  While I agree with the final outcome of this case based solely on Kentucky law, I do not agree with all of the reasoning in the lead opinion.  In particular, it seems to treat Plambeck's failure to maintain adequate licensure as a mere administrative quibble of no real consequence.  However, the breadth of the opinion's reasoning would seem to apply equally to far greater faults as well.

In addition, I think the specter of insurance companies lying in the weeds, making huge payouts in the hope of later recovery through fly-specking credentials, is no more than a fantasy.  In this case, the insurance company paid the chiropractic bills of its insureds in good faith.  Only later did the insurance company learn that some of its counterparties were unlicensed.  While Kentucky law demands our outcome today, I would not gloss over the problems that this decision could create or uncover.